Henry C. Kaplan v. Commissioner.
Kaplan v. Commissioner
Docket No. 107869.
United States Tax Court
1942 Tax Ct. Memo LEXIS 4; 1 T.C.M. (CCH) 336; T.C.M. (RIA) 42673; 12/30/1942
*4 A dividend in kind distributed to the stockholders' agent, subject to a contingent liability to pay taxes of the declaring corporation which were not then recognized by it as a liability held taxable pro rata to the stockholders without reduction for the contingent liability, although the stockholders voluntarily agreed among themselves to permit the agent to withhold an amount sufficient to meet the taxes and the taxes were ultimately paid from the funds so withheld. Maurice Austin, Esq., 60 E. 42nd St., New York City, for the petitioner. J. R. Johnston, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: A deficiency in income tax for the year 1937 has been determined in the amount of $6,066.01. The errors assigned in the original petition have been abandoned, and on May 6, 1942 petitioner paid $3,782.59, plus interest, on account of the deficiency, and thereafter filed a waiver consenting to the assessment of the portion of the deficiency thus paid. The only issue to be decided, which was raised by an amended petition, is whether petitioner is taxable upon the portion of a dividend that was placed in escrow by agreement of the stockholders to cover taxes that *5 might thereafter be asserted against the corporation. The stipulated facts are adopted as our findings. They may be briefly summarized. [The Facts] Petitioner, a resident of New York City, filed his return for 1937 with the Collector for the third district of New York. On June 30, 1937 petitioner owned 334 shares, or 34.79%, of the outstanding 960 shares of stock of the Beer Realty Company, Limited, a Louisiana corporation. One Harry Latter owned a like amount, and he and petitioner were two of the company's three officers and directors. The remaining officer and director were both members of the law firm which represented the company. The remaining 292 shares of stock were owned by five minority shareholders. Prior to 1932 the Beer Realty Company had leased certain real property to a tenant. The tenant was adjudicated a bankrupt in 1932 and the bankruptcy proceedings were converted into reorganization proceedings under section 77B of the Bankruptcy Act. The Beer Realty Company filed a claim in said proceedings for accrued rent and liquidation damages for breach of lease, which claim was allowed in April 1937 in the amount of $188,000. The claim had been placed in the hands *6 of the law firm of Monroe & Lemann for collection. On June 10, 1937 a plan of reorganization of the debtor was approved and confirmed under which the Beer Realty Company was to receive, upon its allowed claim, cash of $47,000 and stock and bonds of the reorganized company. On June 30, 1937, petitioner and Latter, the majority stockholders of Beer Realty Company, consummated purchases from the five minority stockholders of all their shares of Beer Realty Company stock at a price of $350 per share. The terms and conditions of the purchasers were set forth in written agreements dated June 30, 1937. They provided that in addition to $350 per share the minority stockholders were to receive their pro rata share of the claim against the bankrupt tenant that had been allowed in the amount of $188,000. The agreements, also recited that the Beer Realty Company was obligated to pay certain fees and commissions in connection with the claim and would perhaps be called upon to pay taxes by reason of its realization. The agreements provided that "All these items should be borne proportionately by all of the stockholders." It was therefore agreed that the firm of Monroe & Lemann, "to whom the claim *7 * * * is being assigned, after declaration of that claim as a dividend," should collect the cash and securities and withhold therefrom an amount sufficient to pay the fees, commissions and taxes that might be levied upon Beer Realty Company. The balance was to be distributed pro rata among the stockholders, and the amount withheld and not required to meet fees, commissions or taxes within two years, or upon the termination of any litigation pending at the expiration of two years, was to be distributed pro rata among the stockholders. The agreements declared that the purpose of the foregoing provisions was that the stockholders in accordance with their respective interests should "protect and indemnify the corporation concerning any of the above mentioned items which the corporation may be called upon to pay." On June 30, 1937 the board of directors of Beer Realty Company declared a dividend "consisting of and payable by assignment and transfer to said stockholders, pro rata, of that certain claim" against the bankrupt. It was also resolved that the corporation, "acting upon instructions of the stockholders * * *, execute an assignment of the aforesaid claim to Messrs. Monroe and *8 Lemann, attorneys, as the duly constituted representatives of the said stockholders * * * in order to effectuate the dividend here declared * * *." Following the declaration of the dividend each of the stockholders executed and delivered a power of attorney to the firm of Monroe & Lemann, which recited that the claim had been declared by Beer Realty Company as a dividend and that the stockholder had instructed the declaring corporation to assign the claim to Monroe & Lemann "as the agents and representatives of the stockholders, for the purpose of effectuating said dividend * * *." Each power of attorney authorized and directed Monroe & Lemann to receive the cash and securities in payment of the claim, to withhold amounts in accordance with the agreements between the stockholders as set forth above, and to distribute the balance. Petitioner executed his power of attorney in favor of Monroe & Lemann on July 7, 1937. On or about June 30, 1937, each of the stockholders addressed a letter, dated June 30, 1937, to Beer Realty Company, enclosing a copy of the power of attorney executed by him and directing the Beer Realty Company to assign the claim to Monroe & Lemann "as the duly constituted *9 representatives of the stockholders * * *." Under date of June 30, 1937, but following the declaration of the dividend, the Beer Realty Company assigned the claim to Monroe & Lemann "as the fully constituted representative of the stockholders of Beer Realty Company, Limited * * *". Attached to the assignment were copies of the powers of attorney executed by the stockholders. The net proceeds of this claim, which were received by Monroe & Lemann during 1937, aggregated $90,161.33 in cash and fair market value of bonds and stock, after deducting fees and commissions that were payable out of the proceeds. Petitioner's share of the net proceeds was $31,367.11, which is the amount the Commissioner has determined should be included in petitioner's gross income. Beer Realty Company continued as a solvent, going concern after the declaration of the dividend in kind on June 30, 1937. One of the purposes in declaring the dividend in kind was legally to avoid, if possible, a tax on the corporation with respect to receipt of income in connection with the claim. The Commissioner of Internal Revenue thereafter determined that the corporation was taxable upon the proceeds of the claim and made *10 other additions to the corporation's gross income for 1937. Deficiencies in income tax and excess profits tax for 1937 were assessed against the Beer Realty Company in the amount of $20,989.86, which amount, with interest of $1,703.34, making a total of $22,693.20, was paid on July 20, 1939 by the firm of Monroe & Lemann from the proceeds of the claim that had been withheld by them. The portion of the taxes and interest thus paid which was attributable to the inclusion in the gross income of Beer Realty Company of the proceeds of the claim was $20,720.26, of which $19,165.02 represented taxes and $1,555.24 represented interest. In 1941 additional income taxes of the State of Louisiana for 1937 were assessed against and paid by the corporation by reason of including in its gross income the proceeds of the claim. The amount of this tax, $3,606.45, plus interest of $775.38, or a total of $4,381.83, was reimbursed to the company by Monroe & Lemann from the proceeds of the claim withheld by them. During 1937 petitioner received from Monroe & Lemann as distributions of the claim proceeds only the amount of $9,605.08. He concedes, however, that there should be included in his gross income *11 for 1937 by reason of the dividend the amount of $21,947.71. The difference of $9,419.40 between this amount and the sum of $31,367.11 which respondent has included in gross income represents petitioner's pro rata share of the federal and state taxes and interest which were eventually paid by Monroe & Lemann from the proceeds withheld by them. It is only this amount that is in dispute. [Opinion] The parties argue rather extensively on brief as to whether there was an agreement with the corporation that the shareholders would pay the taxes in question in the event they were imposed upon it. Petitioner contends that there was such an agreement, whereas respondent maintains that there was an outright and absolute declaration of a dividend with a mere agreement among the stockholders, but not with the corporation, to pay the corporate taxes. We think petitioner is correct in contending that there was an implied agreement or an understanding of some kind between this closely held corporation and the stockholders that if the corporation were called upon to pay a tax in connection with the claim the stockholders would respond. In spite of this, however, we think petitioner is *12 not entitled to prevail. The question really comes down to whether, if a distribution is made to stockholders with the understanding that they will pay taxes of the corporation which at the time of distribution are contested, the amount of taxes ultimately paid may be excluded from the taxable dividend. This question must be answered in the negative upon the authority of . The tax liability of the corporation was not recognized by it nor presumably by petitioner or the other officers and stockholders. It was contested, and in 1937 it was nothing more than a contingent liability. Amounts received in one year must be included in gross income even though by reason of a contingent liability a refund may be required in a later year. ; . In the case last cited we expressed the view that , upon which and related cases petitioner relies, had been overruled by *13 The corporate taxes might never have materialized, but whether they did or not is immaterial, for on settled principles of law the taxes of the individual shareholders must be computed annually on the basis of facts as they exist in each year. Petitioner insists, however, that he did not personally receive the amount of $9,419.40 which was ultimately paid as corporate taxes, that he had no right at any time to receive it, and that as to this amount the firm of Monroe & Lemann acted as agent for the corporation rather than for the stockholders. There is no merit to this contention. It is to be noted that petitioner does not carry the argument to its logical conclusion by contending that he is taxable only upon the amount actually distributed to him during the tax year. He recognizes his liability to tax upon certain of the claim proceeds even though they were retained by Monroe & Lemann beyond the taxable year, and this is in accordance with the settled principle that receipt by an agent is the equivalent of receipt by the stockholder. , certiorari denied, ; , *14 affd. , certiorari denied, . There is no basis whatever in the stipulated facts for the conclusion that any part of the amount withheld by the attorneys was retained by them as agents of the corporation. All of the documents are careful to speak of the law firm as the representative or agent of the stockholders. This was only natural, bearing in mind the purpose of the corporation in declaring the dividend. That purpose was to avoid, if possible, income taxes upon the proceeds of the claim by transferring the claim before it had been realized in cash. The object was to part with the entire claim before it was collected, and of course the argument of the corporation would not have been valid if the claim or any part of it had merely been assigned to an agent of the corporation. The contention now made, that part of the proceeds were held by the corporation's agent, is thus clearly contrary to the intent and purpose of the corporation in distributing the claim in kind. The dividend in question was a distribution of the entire claim in kind, and not a distribution of a portion of the proceeds of the claim *15 and a reservation of the balance. The arrangement for withholding part of the distribution to cover taxes is not shown to have been required or suggested by the corporation. On the contrary the arrangement served a very real purpose in so far as petitioner and Latter were concerned. Inasmuch as the minority stockholders were stepping out of the picture with their pro rata share of the dividend, petitioner and Latter wanted to make sure that they would bear their share of the taxes. This object was accomplished by the withholding. So far as appears, this was but a voluntary arrangement by and among the stockholders to solve their own individual problems. Clearly, the voluntary agreement to deposit a part of a dividend distribution in escrow does not operate to relieve the stockholders from tax thereon. There is nothing to suggest that the dividend was declared in reliance upon the agreement to set aside the amount in question, or that it would not have been declared in the absence of such an agreement. Indeed, the purpose of the corporation, to avoid the payment of taxes, would seem to lead to the conclusion that the distribution would have been made in any event. Decision will *16 be entered under Rule 50.